## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ROBERT FULLERTON, et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>TINTON FALLS, et al.,<br><br>*Defendants*. | Civil Action No.:<br>3:18-cv-3248-PGS-LHG<br><br>**MEMORANDUM AND ORDER** |

**SHERIDAN, U.S.D.J.**

This matter comes before the Court on Defendants' motion for summary judgment on the nine count Complaint. (ECF No. 29). During the course of this motion, Plaintiff voluntarily dismissed Counts III, IV and V (Pls.' Opp'n Br. 1, ECF No. 31, p. 32 of 48). As such, only the six counts against Officer Reyes remain. They are:

| Count 1: | Excessive Use of Force under § 1983 (Count I); |
|---|---|
| Count II: | Illegal Search/Seizure under § 1983 (Count II); |
| Count VI: | Violation of the New Jersey Civil Rights Act (NJCRA) (Count VI); |
| Count VII: | Assault and Battery (Count VII); |
| Count VIII: | Negligence (Count VIII); and |
| Count IX: | Trespass to Chattels and Land (Count IX). |

I.

On October 8, 2017 at about 5:00 p.m., Robert (father) and Bobbi Rene (daughter) Fullerton were at home. (PSOMF ¶ 1). Bobbi Rene was cleaning her fish tank and many of the fish tank materials were strewn about the kitchen. Robert requested that Bobbi Rene clean up her fish tank because he was preparing dinner. Robert exited the kitchen and walked outside onto the patio. (PSOMF ¶ 1). When Robert returned a few minutes later, the kitchen was still in disarray; and an argument erupted as Robert took Bobbi Rene's laptop so she would clean the kitchen.

(Defs. Statement of Material Facts Not in Dispute (DSOMF) ¶ 1, ECF No. 29-1).  This argument continued as the father and daughter walked out to the patio and it lasted for approximately thirty seconds to a minute.  (PSOMF ¶ 1); (*see* DSOMF ¶1).  After the argument concluded, Bobbi Rene went back inside while Robert remained on the patio.  (*See* PSOMF ¶ 1).

Unbeknownst to Plaintiffs, Mr. Mercadante heard the argument, and called the Tinton Falls Police believing the argument to be a possible domestic violence dispute to which Office Reyes responded.  (see DSOMF ¶¶ 3, 5).  Officer Yurcisin was also dispatched.

Arriving first, Officer Reyes interviewed Mr. Mercadante at the park across the street from the Fullerton residence.  (*See* DSOMF ¶¶ 3, 5).  Mr. Mercadante allegedly told Officer Reyes that he had heard a man and woman yelling at each other from across the street, and pointed in the direction of the Fullerton residence.  (*See id.* ¶ 5).  After speaking with Mr. Mercadante, Officer Reyes proceeded, on foot, toward the Fullerton residence.  (DSOMF ¶ 5).

Meanwhile, shortly after the 911 call was concluded, Lieutenant Kyle Pierson, a patrol lieutenant with the TFPD called Robert Fullerton, his longtime friend.  (PSOMF ¶ 2).

During the telephone conversation between Lt. Pierson and Robert, Lt. Pierson informed Robert that the TFPD had received a call about some commotion near Plaintiffs' Residence.  (*See id.*); (DSOMF ¶ 10).  Robert advised that he and Bobbi Rene had engaged in an innocuous argument about cleaning a fish tank, but that the argument had concluded.  (See PSOMF ¶ 3).  Acknowledging this information, Lt. Pierson informed Robert that a police officer would be following up.  (DSOMF ¶ 10).

After the phone conversation ended, Lt. Pierson radioed Officers Reyes and Yurcisin to alert them that he had just spoken with Robert, that the disturbance was a relatively harmless father-daughter argument, and ordered the officers to "proceed with caution."  (PSOMF ¶¶ 3, 5).

To "proceed with caution" means: "Just slow down, turn off your lights and sirens, there's no reason to put the public at risk if I don't believe it's a situation that warrants us going through lights and stop signs." (Deposition of Kyle Pierson 24:17-20, Feb. 28, 2019, Defs.' Ex. E to Finizio Cert., ECF No. ECF No. 29-8); (see PSOMF ¶ 3). Officer Yurcisin verbally acknowledged receipt of Lt. Pierson's radio transmission; but it is unclear whether Officer Reyes heard Lt. Pierson's direction.

Officer Reyes walked to the front door of the house, he knocked on the door and rang the doorbell several times, but Plaintiffs did not immediately answer the door. (*Id.* ¶ 13). Evidently, while Officer Reyes was knocking on the front door, Robert was standing on his outdoor patio and may have still been on the phone with Lt. Pierson. (PSOMF ¶ 8). Robert eventually heard the knocking and ended his phone conversation with Lt. Pierson to answer the door[1]. (*Id.*).

The parties' versions of what happened next differ in several important respects.

Plaintiffs allege that Robert Fullerton opened the front door of his residence expecting to see a police officer on his front stoop, but nobody was there. (PSOMF ¶ 8). As Robert looked outside, he saw Officer Reyes standing by the garage approximately twenty-five feet away from him. (*Id.*). Robert walked outside, and stepped onto the front stoop. (*Id.* ¶ 9). As he walked onto the stoop, and while the front door was still open, Sadie, Plaintiffs' younger German Shepherd, "brushed past [Robert]" in the direction of Officer Reyes. (*Id.* ¶ 9). Robert claims that Sadie was neither barking nor growling as it ran toward Officer Reyes. (*Id.*).

---

[1] There were multiple signs warning of dogs on the front lawn: "BEWARE…DOGS WILL ATTACK;" "DO NOT GET OUT OF YOUR CARS DOGS WILL ATTACK;" "WARNING! SECURITY DOG;" and "DOGS WILL ATTACK DO NOT GO BEYOND THIS POINT." (DSOMF ¶ 6). Some of the signs contained pictures of Plaintiffs' German Shepherds. (*Id.* ¶ 7). Officer Reyes denies that he saw these signs as he approached the Fullerton residence. (*Id.* ¶ 8).

Plaintiffs allege that Sadie was a few feet from Officer Reyes when Robert observed Reyes pull his gun and point it at Sadie; Robert yelled several times to Officer Reyes, "Don't shoot!" (*Id.*). Despite Robert's plea, Officer Reyes fired at Sadie, shooting the dog. (*Id.*). The dog immediately turned away from Reyes and crossed Robert's path when Officer Reyes fired again hitting Sadie for the second time. (*Id.*). Plaintiffs claim that Sadie was then at a 90-degree angle when Officer Reyes fired his third and final shot into Sadie. (*Id.*). The dog was allegedly knocked backwards and stumbled around in the grass. (*Id.*).

In shock, Robert claims that he ran toward the dog, but Officer Reyes ordered him to the ground and pointed his gun at Robert's face. (*Id.*). Robert complied, raised both his hands, and continuously asked Officer Reyes why he had shot the dog. (*Id.*).

Immediately thereafter, Bobbi Rene heard popping noises and a dog whimpering from outside. (*Id.* ¶ 14). As Bobbi Rene approached the front door of the house, which was still open, Hannah, the older German Shepherd, was directly in front of Bobbi Rene and exited the house first. (*Id.*). Bobbi Rene claims that Hannah "wobbled" toward Officer Reyes, then Officer Reyes fired at Hannah, and Reyes fired again a few moments later, shooting the dog once more. (*See id.*). Plaintiffs allege that Officer Reyes then pointed his gun at Bobbi Rene's face while she repeatedly begged Officer Reyes not to shoot her. (*Id.*). Both dogs, still alive at this time, ran toward the back of the house. (*Id.*). Bobbi Rene told Officer Reyes that she had to tend to her dogs, so she ran past him toward the back of the house to look for the dogs. (*Id.*).

Officer Reyes's account of the events, on the other hand, are quite different from Plaintiffs'. According to Reyes, after he knocked on the door several times and nobody answered, he walked toward the garage. (*See* DSOMF ¶ 13). Officer Reyes neither saw nor heard the Fullertons or the dogs at this time. (*See id.*). Reyes alleges that a few seconds later, the front door of the Fullerton

4

residence opened suddenly, and he saw a German Shepherd (Sadie), "unleashed and uncontrolled," running toward him. (*Id.* ¶ 14). Officer Reyes alleges that he took a few steps back to create space between him and the dog, but the dog "charged" at him, and he was forced to shoot the dog for his own safety. (*Id.* ¶ 15).

After he fired at Sadie, Officer Reyes claims that he saw Robert Fullerton exit the house. (*Id.*). Officer Reyes ordered Robert to the ground at gunpoint as Robert shouted profanities and asked why the dogs were shot. (*See id.* ¶ 16). As his gun was pointed at Robert, Officer Reyes then saw a second German Shepherd (Hannah) emerge from the house, charging at him "in the same aggressive manner" as the first dog. (*Id.* ¶ 19). Officer Reyes alleges that, once again, for his safety, he was forced to shoot the second dog. (*Id.* ¶¶ 19, 21). Officer Reyes then saw Bobbi Rene exit the house and he ordered her to the ground at gunpoint. (*Id.* ¶ 22). Bobbi Rene also used profanity when asking why Officer Reyes shot the dogs. (*See id.*). Bobbi Rene did not comply with Officer Reyes' orders to lay on the ground and instead ran after the injured dogs. (*Id.* ¶ 23). Officer Reyes still pointed his gun at Robert.

The parties agree that a few minutes later Officer Yurcisin arrived at the scene, at which point Officer Reyes put his gun away. (PSOMF ¶ 23). Moments later, several TFPD officers, including Lt. Pierson, and other local police officers arrived at the scene. (*See id.* ¶ 24). Both dogs were immediately taken to a local veterinary hospital to receive emergency medical care. (*See* DSOMF ¶ 24). Sadie died while Hannah lived, but suffered severe injuries. (*Id.*).

The incident was investigated by the TFPD Internal Affairs Unit and the Monmouth County Prosecutor's Office. (*Id.* ¶ 25). The TFPD concluded that Officer Reyes did not violate any policies, guidelines, or procedures concerning the discharge of his firearm. (*Id.* ¶ 26). The TFPD, however, also found that Officer Reyes failed to activate his Mobile Video Recorder

(MVR) camera and microphone upon arrival at the scene; as such, Officer Reyes received a one-day suspension. (*Id.* ¶ 27). The Monmouth County Prosecutor's Office similarly concluded that Officer Reyes's firearm discharge was conducted within the relevant guidelines. (*Id.* ¶ 29).

II.

The standard for granting summary judgment is a "stringent one." *Robinson v. Winslow Twp.*, 973 F. Supp. 461, 466 (D.N.J. 1997). Summary judgment is appropriate under Fed. R. Civ. P. 56 when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); Fed. R. Civ. P. 56(a).

A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *United States ex rel. Greenfield v. Medco Health Sols., Inc.*, 880 F.3d 89, 93-94 (3d Cir. 2018). In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

Moreover, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247-48; *Greenfield*, 880 F.3d at 93. If a court determines, "after drawing all inferences in favor of [the non-moving party], and making all credibility determinations in his favor - that no reasonable jury could find for him, summary judgment is appropriate." *Alevras v. Tacopina*, 226 F. App'x 222, 227 (3d Cir. 2007).

Here, the chief argument of Officer Reyes is that the doctrine of qualified immunity applies, and summary judgment should be granted. To the contrary when there are disputed facts, "those issues must be determined by the jury." *Monteiro v. City of Elizabeth*, 436 F.3d 397, 405 (3d Cir. 2006) (citing Johnson v. Jones, 515 U.S. 304, 313 (1995).

III.

At the outset, the parties agree that (a) the killing of a person's dog by a law enforcement officer constitutes a seizure under the Fourth Amendment (*Brown v. Muhlenberg Twp.*, 269 F. 3d 205, 210 (3d Cir. 2001)); and (b) "the pointing of a weapon at an individual constitutes a seizure because that act "would have conveyed to a reasonable person," that he was not to leave. *United States v. Lowe*, 791 F.3d 424, 430 (3d Cir. 2015) (quoting *Cal. v. Hodari D.*, 499 U.S. 621, 627-28 (1991)). In assessing qualified immunity in this type of case, the Courts ordinarily apply the objective reasonable standard. See *Graham v. Connor*, 490 U.S. 386, 394-95 (1989). Qualified immunity protects the state actor for his reasonable actions.

More specifically, the next issue is whether qualified immunity protects Officer Reyes for shooting the dogs. The Third Circuit has held that while public safety is a legitimate governmental interest in the context of dogs, the state may not destroy a pet when the pet does not pose an "imminent" danger to the officer or others, and when the owner(s) is looking on and is "desirous of retaining custody" of the pet. *Brown*, supra at 269 F.3d at 210-11. The *Brown* court concluded that because the plaintiffs' pet dog did not pose an immediate threat to the officer, and the officer knew the dog belonged to the plaintiffs, the officer's shooting of the dog constituted an unreasonable seizure; and thus denied the officer qualified immunity. *See, e.g., VA. Chappell v. Horsham Twp. Police Dep't*, CIVIL ACTION NO. 2:16-cv-02650, 2018 U.S. Dist. LEXIS 198171, at *18-21 (E.D. Pa. Nov. 20, 2018); *Pettit v. New Jersey*, Civil Action No. 09-cv-3735

7

(NLH), 2011 U.S. Dist. LEXIS 35452, at *20 (D.N.J. Mar. 30, 2011); *Dziekan v. Gaynor*, 376 F. Supp. 2d 267, 271 (D. Conn. 2005).

As noted, there are two different versions of the facts regarding the conduct of the dogs. The varying facts must be assessed by a jury.

Similarly, the issue of whether qualified immunity protects Officer Reyes for pointing his weapon at Robert and Bobbi Rene must be determined.  To resolve this issue, use the *Graham* reasonableness test to determine whether a police officer's act of drawing his weapon and pointing it at citizens during an encounter was reasonable under the circumstances.  *See, e.g.*, *Stiegel v. Peters Twp.*, 600 F. App'x 60, 66-67 (3d Cir. 2014); *Mellott v. Heemer*, 161 F.3d 117, 123 (3d Cir. 1998).  Here, when looking at the reasonableness of Officer Reyes' actions, the facts are in dispute. Plaintiffs state that they were unarmed and the dogs were friendly, while Officer Reyes states that the dogs were growling and he was in fear for his life, as he was quelling the situation.  A jury must determine the facts.  *Monteiro v. City of Elizabeth*, 436 F.3d 397, 405 (3d Cir. 2006) (citing *Johnson v. Jones*, 515 U.S. 304, 313 (1995); *see Azurdia v. City of New York*, 18-cv-04189-ARR-PK, 2019 U.S. Dist. LEXIS 52967, at *19-25 (E.D.N.Y. Mar. 28, 2018).  As such, summary judgment is denied on Counts I and II.

IV.

In Count VI of Plaintiffs' Amended Complaint, Plaintiffs allege unreasonable seizure in violation of state constitutional protections under the New Jersey Civil Rights Act ("NJCRA"). The NJCRA, which creates a private cause of action for violations of civil rights under either the federal Constitution or New Jersey Constitution, "was modeled after § 1983 and is interpreted analogously therewith in this District."  Geissler v. City of Atl. City, 198 F. Supp. 3d 389, 394

(D.N.J. 2016); see Pettit, 2011 U.S. Dist. LEXIS 35452, at *10 ("This district has repeatedly interpreted NJCRA analogously to § 1983.").

Therefore, because summary judgment has been denied on Plaintiffs' excessive force and unreasonable seizure claims under § 1983, summary judgment is likewise denied on Plaintiffs' constitutional claim pursuant to the NJCRA (Count VI).

V.

Plaintiffs allege common law tort claims against Officer Reyes under New Jersey law: assault and battery, negligence, and trespass to chattels and land (Counts VII – IX).  Officer Reyes moves for summary judgment on all these claims.

Common law tort claims—arising from both intentional and negligent conduct—against public entities and public employees are governed by the New Jersey Tort Claims Act ("NJTCA"), N.J. Stat. Ann. § 59:1-1, et seq.  *Booker v. Twp. of Willingboro*, Civil No. 10-4886 (JBS/JS), 2012 U.S. Dist. LEXIS 87435, at *16 (June 22, 2012); *Velez v. City of Jersey City*, 180 N.J. 284 (2004). The NJTCA "was enacted with the purpose of limiting a public entity's or a public employee's liability in certain situations."  *R.K. v. Y.A.L.E. Schs., Inc.*, 621 F. Supp. 2d 188, 199 (D.N.J. 2008); *Davis v. Township of Paulsboro*, 371 F. Supp. 2d 611, 617 (D.N.J. 2005).

Here, Plaintiffs allege (1) that Officer Reyes committed assault and battery against them and their two dogs by pointing his weapon at Plaintiffs and shooting the dogs; (2) that Officer Reyes was negligent in his actions; and (3) that Officer Reyes interfered with their possessory rights to their real and personal property by entering their land and shooting their dogs, thus constituting trespass to chattels and land.

A. <u>Assault and Battery</u>

Under New Jersey law, "[a] person is subject to liability for the common law tort of assault if: (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension." *Leang v. Jersey City Bd. of Educ.*, 198 N.J. 557, 591 (2009) (citation and internal quotation marks omitted). A battery includes a preceding assault, and extends to the actual, "nonconsensual touching" of another. *Id.*

Here, Officer Reyes argues that his actions were lawful and reasonable. He also asserts an affirmative defense of self-defense, claiming that he was impelled to defend himself against the uncontrolled dogs that confronted him. *See Hagopian v. Fuchs*, 66 N.J. Super. 374, 379 (N.J. Super. Ct. App. Div. 1961). As detailed above, there are genuine disputes of material fact about the behavior of Plaintiffs' dogs and, accordingly, whether it was reasonable for Officer Reyes to shoot the dogs and point his weapon at Plaintiffs. Therefore, Plaintiffs' assault and battery claims will proceed to trial.

B. <u>Negligence</u>

Next regarding Plaintiffs' negligence claim, "[n]egligence may be defined as a failure to exercise, in the given circumstances, that degree of care for the safety of others, which a person of ordinary prudence would exercise under similar circumstances." (N.J. Model Civil Jury Charge 5.10A, Revised Jan. 2019). To establish a prima facie case of negligence, Plaintiffs must prove the following: "(1) duty of care, (2) breach of duty, (3) proximate cause, and (4) actual damages." *Wartsila NSD N. Am., Inc. v. Hill Int'l, Inc.*, 342 F. Supp. 2d 267, 278 (D.N.J. 2004) (citations and internal quotation marks omitted). In this case, Officer Reyes maintains, once again, that he acted reasonably under the circumstances based on the situation with which he was

confronted.  Still, these are factual questions for a jury to decide, and as such, summary judgment is denied on the negligence claim.

C.  Trespass to Chattels and Land

Generally, "[a]n action for trespass arises upon the unauthorized entry onto another's property, real or personal." *Pinkowski v. Township of Montclair*, 299 N.J. Super. 557, 571 (N.J. Super. Ct. App. Div. 1997) (citing *State v. Wouters*, 71 N.J. Super. 479, 485 (N.J. Super. Ct. App. Div. 1962)).  A defendant is liable in trespass to land for an "intentional entry onto another's land, regardless of harm . . . A defendant is also liable if he recklessly or negligently, or as a result of an abnormally dangerous activity enters onto another's land, and the entry causes harm." *Ross v. Lowitz*, 222 N.J. 494, 510 (2015).  Trespass to chattel "occurs when personal property, in the actual use of the owner, is injured or taken by a trespasser, so that the owner is deprived of the use of it." *Grisafi v. Sony Elecs. Inc.*, 2019 U.S. Dist. LEXIS 72876, at *26 (D.N.J. Apr. 30, 2019) (quoting *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 312 (D.N.J. 2009)) (internal citation and quotation marks omitted).  "All that is required . . . is interference with the chattel as a direct or indirect result of an act done by the actor." *Grisafi*, 2019 U.S. Dist. LEXIS 72876, at *26.

Here, Officer Reyes lawfully entered Plaintiffs' property as a result of the 911 call to which he was ordered to respond.  Therefore, summary judgment is granted in favor of Officer Reyes on Plaintiffs' trespass to land claim.  Nevertheless, Plaintiffs present a cognizable claim that Sadie and Hannah—Plaintiffs' chattel—were harmed as a result of Officer Reyes's actions.

Alternatively, Officer Reyes argues that even if Plaintiffs could prove prima facie cases of their common law tort claims, he is nevertheless immune from liability under "good faith" immunity exception under the NJTCA, since he was "act[ing] in good faith in the execution or enforcement of any law." N.J. Stat. Ann. § 59:3-3.  To overcome immunity under a "good faith"

11

theory, "a plaintiff must prove more than ordinary negligence . . . Summary judgment under section 59:3-3 is appropriate if a public official establishes that his or her 'acts were objectively reasonable or that they performed them with subjective good faith.'" *Nicini v. Morra*, 212 F.3d 798, 815 (3d Cir. 2000) (quoting, in part, *Canico v. Hurtado*, 144 N.J. 361, 365 (1996)).

In this case, as explained above, the reasonableness of Officer Reyes' actions—the question upon which this case turns—rests on disputed factual issues that cannot be resolved at the summary judgment stage. As such, summary judgment is denied on all of Plaintiffs' tort claims except trespass to land.

## VI.

Finally, Defendants argue that under § 1983 and the NJCRA, Plaintiffs cannot recover punitive damages against Officer Reyes. A jury may assess punitive damages against a defendant "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983); *see DeLuzio v. Monroe County*, 271 F. App'x 193, 198 (3d Cir. 2008). As set forth above, there are factual disputes regarding Officer Reyes's actions. Therefore, summary judgment is denied on this issue.

## **ORDER**

This matter, having come before the Court on Defendants' Motion for Summary Judgment (ECF No. 29), and the Court having carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments and exhibits therein presented, and for good cause shown, and for all of the foregoing reasons,

IT IS on this ___30th___ day of September, 2020,

12

ORDERED that Defendant's Motion for Summary Judgment (ECF No. 29) is granted in part and denied in part; and it is further;

ORDERED that the motion for summary judgment is denied with regard to Counts I, II, VI, VII and VIII; and it is further;

ORDERED that the motion for summary judgment is granted on Counts III, IV, and V as Plaintiff agreed to dismiss them. All claims against the Borough of Tinton Falls and Chief of Police John A. Scrivanic are dismissed with prejudice; and it is further;

ORDERED that with regard to Count IX, the motion for summary judgment is granted with regard to the trespass to land cause of actions and denied with regard to trespass to chattel; and it is further;

ORDERED that the motion to strike punitive damages is denied.

PETER G. SHERIDAN, U.S.D.J.